UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEMEIKA W.,

             Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

**DECISION AND ORDER**

20-CV-6656S

1.      Plaintiff Demeika W.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed her applications with the Social Security Administration on January 13, 2017.  Plaintiff alleged disability beginning July 25, 2016, due to post-traumatic stress disorder ("PTSD"); anxiety; and depression.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

3.      On June 11, 2019, ALJ John Costello held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Dawn Blythe (by videoconference)

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

appeared and testified.  (R.[2] at 17, 33-77.)  Plaintiff was 35 years old as of her onset date and she had a high school education.  Her past relevant work was collections clerk and order clerk (sedentary occupations) (R. at 27).

4.      The ALJ considered the case *de novo* and, on July 30, 2019, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 16, 17.)  Plaintiff filed a response on February 28, 2022 (Docket No. 18), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's July 30, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff engaged in substantial gainful activity in 2018. (R. at 19, 20.) It was unclear to the ALJ when Plaintiff stopped working after the July 25, 2016, onset date, but the ALJ resolved temporal inconsistencies in Plaintiff's

4

favor (R. at 20).   At Step Two, the ALJ found that Plaintiff has the following severe impairments:  PTSD; anxiety; and depression (R. at 20).  The ALJ found, however, that Plaintiff's carpel tunnel syndrome and asthma were nonsevere impairments (R. at 24-25). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with nonexertional limitations.  Here, the ALJ found that Plaintiff retained the mental capacity to perform simple routine tasks with occasional interaction with supervisors and coworkers but with no interaction with the public.  (R. at 22.)

13.     At Step Four, the ALJ found Plaintiff is unable to perform her past relevant work.  (R. at 26-27.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 27-28.)  The ALJ found Plaintiff's ability to perform at all exertional levels has been compromised by nonexertional limitations.  The ALJ then posed hypotheticals to the vocational expert of a claimant like Plaintiff in age, education, and vocational experience.  The expert said the hypothetical claimant could perform such jobs as housekeeper (light exertion work), laundry laborer (medium work), and hand packager (medium work) (R. at 27-28).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 28.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ's finding that her impairments did not prevent her from performing substantial gainful activity was not supported by substantial evidence.  As to

the finding that her carpel tunnel syndrome and asthma were nonsevere impairments, Plaintiff next contends the ALJ failed to rely upon a medical opinion to support this finding. Further, Plaintiff faults the ALJ for consideration of the psychological consultative examination. Finally, she argues that the RFC is not supported by substantial evidence. For the reasons that follow, these arguments are unavailing.

15.     Plaintiff first argues that the ALJ rejected medical opinions that found impairments from carpel tunnel syndrome and asthma and advised revaluation of her symptoms in a few months, leaving what Plaintiff terms as evidentiary gaps by not obtaining updated assessments (Docket No. 16, Pl. Memo. at 17, 20; R. at 25).

16.     Plaintiff had a history of carpel tunnel syndrome and had surgery on her left arm (R. at 448). Plaintiff's left wrist surgery was on January 31, 2017 (R. at 23, 392-93, 607; see Docket No. 17, Def. Memo. at 10).

17.     Dr. Harbinder Toor examined Plaintiff on April 11, 2017 (R. at 448). Dr. Toor observed Plaintiff had full range of motion in her left wrist with slight tenderness (R. at 450). The doctor also noted tingling and tenderness in Plaintiff's left hand with grip strength 2/5 (R. at 450, 451). Dr. Toor examined Plaintiff's lungs and found it clear to auscultation, no significant chest wall abnormality and normal diaphragmatic motion, despite Plaintiff's history of asthma (R. at 450, 451, 448 (recent asthma attacks); see Docket No. 17, Def. Memo. at 10).

18.     Dr. Toor opined that Plaintiff had moderate to marked limitation doing fine motor activity with her left hand, but mild limitation doing fine motor activities with the right hand (R. at 451). Dr. Toor advised reevaluation in the next few months after Plaintiff's

full recovery from carpel tunnel syndrome (R. at 451).  He also advised Plaintiff avoid irritants or other factors which can precipitate asthma (R. at 451).

19.     The ALJ gave limited weight to the opinion of Dr. Toor because the opinion occurred shortly after Plaintiff's surgery and the record showed improvement in her left hand in less than twelve months of treatment (R. at 25).  The ALJ concluded at Step Two that Plaintiff's asthma and carpel tunnel syndrome were nonsevere impairments, finding that both conditions were well managed and pose minimal functional limitations (R. at 20). The ALJ then found that Plaintiff's carpel tunnel syndrome improved by May 2017 (R. at 23, citing R. at 607-09, 609).

20.     Physician Assistant Kristin Swallow treated Plaintiff on March 29, 2017, following Plaintiff's surgery (R. at 607).  Swallow found that Plaintiff still suffered pain and sensitivity on her hand and that she wore her padded sleeve (R. at 607).  Swallow then examined Plaintiff again on May 1, 2017 (R. at 609).  Swallow noted that Plaintiff was "doing well" and continued to massage over the incision following a history of soreness at the incision site and her improvement was slow, with her fingers were stiff and she suffered pain up her forearm (R. at 609, 608).  Swallow observed that the incision healed well but remained sensitive to the touch (R. at 608).

21.     Plaintiff later testified that she had carpel tunnel syndrome with her hands sometimes working and sometimes not (R. at 43).  She left working at IHOP and Denny's because of her hand pain (R. at 51-52).  This is the extent of Plaintiff's testimony regarding carpel tunnel and its impact on her ability to work; Plaintiff did not mention her asthma.

22.     Plaintiff next focuses on the state agency consultant who opined that she could perform light exertion work with exceptions (Docket No. 16, Pl. Memo. at 18; R. at

85-88).  The ALJ discounted this opinion because the agency consultant found Plaintiff's physical impairments were severe but did not know that Plaintiff's carpel tunnel was resolved after CTS release and her asthma has shown no exacerbations (R. at 26, 23).

23.    Plaintiff concludes that the ALJ lacked medical support for finding that Plaintiff could perform full time work and that the physical RFC is based on the ALJ's own lay opinion (Docket No. 16, Pl. Memo. at 20; see also Docket No. 18, Pl. Reply Memo. (ALJ cannot rely upon his own lay opinion in finding RFC)).  Plaintiff had not recovered from the left-hand carpel tunnel surgery, indicated by soreness at the incision site and slow improvement in May 2017 (R. at 609; Docket No. 18, Pl. Reply Memo. at 4).

24.    Defendant argues that Plaintiff's carpel tunnel and asthma posed only minimal limitations (Docket No. 17, Def. Memo. at 9-12).  After March 2017, Plaintiff's treating sources observed that she did not have significant limitations due to carpel tunnel syndrome or asthma (id. at 10).

25.    Plaintiff cites one medical opinion that she could perform light work (Docket No. 16, Pl. Memo. at 18, citing R. at 85-88), which was part of the RFC finding that Plaintiff could perform work at all external levels (R. at 22).

26.    She claims that her carpel tunnel syndrome worsened, citing diagnoses in the record (Docket No. 16, Pl. Memo. at 19).  Plaintiff cites to mental health counseling notes in the record (e.g., R. at 515-27, 528-35), where the treating sources noted that she had normal muscle tone and strength (R. at 522, 534) or musculoskeletal system being within defined limits (R. at 697) without mention her carpel tunnel syndrome.  She argues these conditions (and others diagnosed) were "not adequately addressed in RFC" (Docket No. 16, Pl. Memo. at 19).

27.     She cites to her right arm evaluation on July 31, 2015, before the July 2016 onset date, with a diagnostic plan including carpal tunnel injection if there was no improvement (R. at 829; Docket No. 16, Pl. Memo. at 19).

28.     Plaintiff has not shown, however, that her carpel tunnel syndrome affected her ability to work.

29.     For example, on October 4, 2017, Plaintiff sought treatment for abdominal pain at Rochester General Hospital, with the hospital staff observing normal range of motion for her musculoskeletal system (R. at 728; cf. Docket No. 16, Pl. Memo. at 19) with no mention of carpel tunnel syndrome.

30.     As for her asthma, the record does not show exacerbation or evidentiary gaps.   Plaintiff points to references in the medical record to various ailments not considered in the RFC (see Docket No. 16, Pl. Memo. at 19, citing R. at 697).  One note found on November 27, 2018 (from an emergency room treatment for alleged domestic abuse), that her respiration was within defined limits and her lungs were found to be clear (R. at 697, 705, 689-726; see Docket No. 16, Pl. Memo. at 14) without noting asthma. Plaintiff's examination on October 4, 2017, also observed normal pulmonary effort and the lack of respiratory distress (R. at 728).

31.     The record shows no gaps or evidence of limitations from carpel tunnel syndrome or asthma to require remand of the ALJ's findings.

32.     Plaintiff's Motion for Judgment on the Pleadings (Docket No. 16) on the ALJ's findings regarding asthma and carpel tunnel syndrome is denied.

33.     Plaintiff next objects that the ALJ improperly accorded heightened weight to the opinion of consultative psychological examiner, Dr. Christine Ransom, who found

merely mild limitations (Docket No. 16, Pl. Memo. at 21-28).  She later claims that ALJ's reliance on a single consultative examination was in error because the ALJ disregards the record of her periods of what she calls "very serious decompensation" (Docket No. 18, Pl. Reply Memo. at 4; see Docket No. 16, Pl. Memo. at 21).

34.     Dr. Ransom conducted a consultative psychiatric examination on April 11, 2017 (R. at 454, 25).  Plaintiff stated she stopped working in 2016 due to development of panic attacks (R. at 454, 25).   Dr. Ransom found in her examination that Plaintiff expressed mildly tense affect during her evaluation (R. at 455, 26).  The doctor diagnosed major depressive disorder, currently mild and episodic, and panic disorder, currently mild and episodic and partially in control with medication and coping strategies (R. at 457, 26). Dr. Ransom opined that Plaintiff had mild difficulty understanding, remembering, and applying complex directions; regulating emotions; controlling behavior and maintaining wellbeing; sustaining an ordinary routine; and regularly attending work (R. at 456, 36). The doctor noted that Plaintiff showed no evidence of limitation in understanding simple instructions or interacting adequately with supervisors, coworkers, or the public (R. at 456, 26).  Dr. Ransom concludes that Plaintiff's psychiatric conditions were "of a mild nature that will not significantly interfere with the claimant's ability to function on a daily basis" (R. at 456, 26).

35.     The ALJ gave Dr. Ransom's opinion some weight, noting that the record shows limitations in Plaintiff's ability to socialize.  The ALJ found that Plaintiff's anxiety, depression, and PTSD limited her to unskilled tasks with occasional interactions with supervisors and coworkers but no public interactions (R. at 25-26, 22, 456-57).

36.     Plaintiff now objects that the ALJ's reliance upon Dr. Ransom's opinion of mild limitations did not reflect her "serious mental health conditions and significant trauma that caused limiting effects" (Docket No. 16, Pl. Memo. at 21).  She cites to her psychiatric record showing her condition was more severe than Dr. Ransom's single evaluation (id. at 23-25).  She faults the ALJ for not accounting in the RFC her episodic symptoms (id. at 25).

37.     Defendant argues that the ALJ properly based the determination on evidence from Dr. Ransom's opinion (Docket No. 17, Def. Memo. at 16-17) and Plaintiff's activities of daily living questionnaire and her testimony (id. at 17-18; R. at 21-24, 59, 63, 235-36).

38.     Plaintiff attempted suicide in 2007, which shows a history of mental illness (R. at 23, 25).  Dr. Ransom also noted this attempt (R. 454, 25).  But the ALJ gave this fact limited value because it predates her July 2016 onset date (R. at 23).

39.     After the onset date, Plaintiff was treated for PTSD in February 2017 by Timothy Smallcomb (R. at 24, 468).  On November 27, 2018, treating source noted that Plaintiff entered treatment following multiple traumatic events, after surviving the Pulse Nightclub shooting in 2016 and reported that her ex-significant other burned her house down (R. at 24, 840).  Plaintiff moved from Florida to New York to evade a threat to her life (R. at 24, 472).  She later walked outside and found a dead body (R. at 24).

40.     Plaintiff argues that she showed more serious abnormalities than identified in the one-time examination by Dr. Ransom (Docket No. 16, Pl. Memo. at 23-24).  For example, Plaintiff's therapist, Timothy Smallcomb, MSW, on October 6, 2016, found that Plaintiff lacked adaptive coping skills and insight regarding grief, loss, and personal

safety, and likely experienced PTSD (R. at 311; Docket No. 16, Pl. Memo. at 23).  Plaintiff

then cites to subsequent reports in her psychological record of stressors she endured (id.

at 24-25).

41.     The ALJ weighed the evidence of Plaintiff's traumatic and episodic past with

findings of her mildly tense affect and anxiety managed by medication (R. at 456, 26),

see Trepanier v. Commissioner, 752 F. App'x 75, 79 (2d Cir. 2018)(summary Order)

(Docket No. 17, Def. Memo. at 17-18).  The ALJ found in the RFC that Plaintiff can work

full time despite her acknowledged history of trauma.

42.     Thus, Plaintiff's Motion for Judgment on Pleadings (Docket No. 16) on the

evaluation of her psychological condition is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings

(Docket No. 16) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket

No. 17) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        July 27, 2022
              Buffalo, New York


                              s/William M. Skretny
                              WILLIAM M. SKRETNY
                              United States District Judge